## MONTICELLO BANK v. BOSTWICK et al.

(Circuit Court of Appeals, Eighth Circuit. November 23, 1896.)

### No. 768.

SPECIAL VERDICT—CHARACTER AND REQUISITES.

A special verdict must be a statement of the ultimate facts which, in the opinion of the jury, the evidence establishes, not of the evidence on which such facts rest; and a special verdict which devolves on the court the duty of deducing from the evidence the ultimate conclusion on a material issue of fact is imperfect and insufficient. Accordingly, *held*, where the jury, under instructions to find a special verdict, found the evidence bearing on the crucial question of fact, instead of the fact itself, that a judgment rendered thereon by the court must be reversed, and a new trial awarded.

In Error to the Circuit Court of the United States for the District of Nebraska.

The Monticello Bank, the plaintiff in error, sued Charles B. Bostwick and Moses C. Nixon, the defendants in error, who were partners in business under the firm name of Bostwick & Nixon, charging, in substance, that said firm had sold to the aforesaid bank a certain note for the sum of $3,000, dated June 13, 1892, and payable to W. W. Bilger or order, which purported to be signed by Caleb Smith, F. M. Bilger, J. H. Louis, George Hayward, Benjamin Piefer, Adelia F. Cosgrove, and J. M. Malick; that to induce the sale the defendants had represented said signatures of the makers of the note to be genuine; that the note was bought, on the faith of said representation, by the plaintiff bank; and that it subsequently transpired that all the signatures to the note, except that of W. W. Bilger, the payee, whose name appeared on the back thereof as an indorser, were forgeries. The defendants below answered the complaint by alleging, in substance, that they were note and bill brokers, residing and doing business at Omaha, Neb., under the firm name of Bostwick & Nixon; that in such capacity, and not otherwise, they had offered the aforesaid note for sale to the plaintiff bank for and in behalf of W. W. Bilger, the payee, supposing the signatures of the makers thereof to be genuine, without making any false representations whatsoever, and that at the time of such negotiation and sale it was well known to the plaintiff bank that the defendants were simply acting as brokers for and in behalf of said W. W. Bilger, to whom the proceeds of the sale of the note were paid. The plaintiff filed a reply denying the latter allegation. The case was tried before a jury, which returned the following special verdict:

"We, the jury in the above case, by the direction of the court, and with the consent of the parties hereto, make and return a special verdict in said case upon the facts, finding as follows:

"(1) The plaintiff is a banking corporation created under the laws of the state of Iowa, at the town of Monticello, Jones county, Iowa, and was such in June, 1892.

"(2) The defendants are citizens of Nebraska, residing at Omaha, Nebraska, engaged in business as a firm as note brokers, and were so engaged in the year 1892, and prior thereto.

"(3) That for some time previous to June, 1892, the defendants had dealt with the plaintiff bank, the usual course of business being to send to the bank a printed circular filled out with the names of parties to paper offered for sale, with the amounts thereof, and statements intended to show the general nature of the

paper offered; that the dealings between the parties up to June, 1892, covers several transactions of sales of paper, amounting in the aggregate to about $20,000.

"(4) That on or about the —— day of June, 1892, the defendants sent by mail to the plaintiff, in the usual course of defendants' business, a written communication reading as follows:

BOSTWICK & NIXON, BROKERS, OMAHA, NEB.

Bonds, Warrants, Bank Stocks and Commercial Paper,

Room 11 Chamber of Commerce.

Reference } Bank of Commerce, Omaha, Neb.
           } The National Bank, Mattoon, Ill.

---

LIST OF PAPER OFFERED, SUBJECT TO PREVIOUS SALE OR WITHDRAWAL.

Names offered have been investigated and found responsible.

Please order the Number Wanted BY WIRE. On request will hold for investigation when possible.

JUNE SERIES—June 24, 1892.

---

JOINT NOTE—NINE GOOD FARMERS AND OTHERS.

*No. 29—$3,000—Six Months at 7% Discount.*

Payable at Council Bluffs, Iowa.

F. M. BILGER (Refers to Citizens State Bank) Oakland, Iowa,

J. H. LEWIS (Refers to Harlan Bank) Harlan, Iowa.

J. M. MALICK (Refers to Shelby County Bank) Harlan, Iowa.

CALEB SMITH (Refers to Shelby County Bank) Harlan, Iowa.

BENJ. PIEFER (Refers to Shelby County Bank) Harlan, Iowa.

GEO. HAYWARD (Refers to Shelby County Bank) Harlan, Iowa.

MRS. A. F. COSGROVE, Council Bluffs, Iowa.

F. M. Bilger is a good farmer, owning 200 or more acres of land at or near Oakland, Iowa, and considered worth $10,000 to $12,000, reported by good authority to be out of debt, and a good and reliable man.

J. H. Louis is quite a prominent man of Shelby County, and a prosperous farmer and stockman; has been county treasurer, and considered worth near or quite $20,000, and good for all obligations he makes; also honorable and prompt on business matters.

Messrs. Malick, Smith, Piefer and Hayward are farmers, reliably reported worth $8,000 to $15,000 each. They own their farms, are practically out of debt, and prudent, industrious and prosperous. A banker who was inquired of says, "All own good farms and are well fixed."

Mrs. A. F. Cosgrove is considered worth $8,000 to $10,000, consisting in part of improved farm lands, balance money at interest.

Payable to and indorsed by

W. W. BILGER,

Council Bluffs, Iowa.

Also indorsed by

W. C. ACKER, late of Harlan, Iowa, now of Atlantic City, Iowa.

W. W. Bilger is considered worth several thousand dollars in Council Bluffs property, but his worth is not definitely estimated. He is an active, energetic man, and gives close attention to all business matters.

W. C. Acker is a farmer worth $5,000 or more, and, like other names on this paper, considered honorable and reliable.

This paper is made by responsible names, all of whom are prudent and honorable, conservative in making obligations, and authentically reported prompt in meeting them. We believe it good and desirable.

---

"(5) That the plaintiff bank, upon due receipt of the foregoing communication, determined to purchase the note thus offered it, and thereupon, on the 27th day of June, 1892, wired defendants their acceptance of the offer.

"(6) That upon receipt of the telegram from the plaintiff bank, the defendants procured the note from W. W. Bilger, who then indorsed it, and forwarded the same to plaintiff, by letter, the same reading as follows:

" 'Memorandum.

" 'Bostwick & Nixon.

" 'Commercial Paper, Warrants, Bonds, Bank Stocks.

" 'Omaha, Neb., June 27, 1892.

" 'Sold to Monticello Bank, Monticello, Ia., following described contract, made or accepted by W. W. Bilger, J. H. Louis, J. M. Malick, F. M. Bilger, Benj. Piefer,

Caleb Smith, George Hayward, and Adelia F. Cosgrove, indorsed or secured by W. C. Acker and W. W. Bilger, payable at First National Bank, Council Bluffs, Ia., with 8% interest after date.

" 'Dated June 13, 1892.    Due December 16, 1892.

" 'Discounted June 28, 1892.

| | |
|---|---|
| Amount | $3,000 00 |
| Interest | 124 00 |

| | | |
|---|---|---|
| 171 days at 7 per cent | $104 47 | |
| 1 day's transit of collection | | |
| Collection 1-10 of 1 % | 3 13 | 107 60 |

| | |
|---|---|
| Net proceeds | $3,016 40 |

" 'Please discount above-described item at 7 per cent. Remit proceeds to Commercial National Bank, Chicago, Ill., for credit National Bank of Commerce, this city, our use, and wire us amount when you remit.

" 'Respectfully,                              Bostwick & Nixon.'

"(7) That upon receipt of the note so [forwarded] by the defendant, the plaintiff bank paid as directed the agreed price, to wit, the sum of $3,016.40, paid June 28, 1892.

"(8) That in making such purchase the plaintiff bank had no other information concerning said note, its validity, value, or ownership, other than that contained in the written communications received from the defendants, and as set forth in findings 4 and 6 hereof; and that the plaintiff relied thereon in making such purchase.

"(9) That in fact none of the names signed to or upon said note were genuine, except that of W. W. Bilger, all the other names being forged and false.

"(10) That in June, 1892, one W. W. Bilger was apparently the owner of some real property and of equities therein in Council Bluffs, Iowa, and was an active, energetic man, and might have been deemed to have property of the then supposed value of several thousand dollars; but, as it afterwards appeared, he was then probably insolvent, and has since disappeared, being wholly worthless, and nothing can be now or could have been collected of him since November, 1892.

"(11) That in forwarding and offering the note in question for sale to the plaintiff bank, and in selling the same, the defendants acted in good faith, believing the signatures to the notes to be genuine; that before selling the same the defendants made reasonable inquiry as to the solvency and responsibility of the parties whose names appear upon said note, but did not make inquiry with respect to the genuineness of the signatures thereto.

"(12) That the defendants were not the owners of said note when the same was offered for sale and sold to the plaintiff bank, as above stated, nor did defendants receive the money paid therefor for their own use, but accounted for and paid over to W. W. Bilger the whole amount received from the plaintiff bank, except the sum of $30.00, paid them as commissions for making the sale as brokers.

"And the jury further find that if, upon the foregoing findings of fact, the law is held by the court to be in favor of the plaintiff, then the jury find as their general verdict in favor of the plaintiff and against the defendants, and assess the damages at the sum of $3,016.40, with interest from June 28, 1892, at 7 per cent.; making the sum of ———.

"Geo. L. Dennis, Foreman.

"But if, upon the foregoing facts, the court holds the law to be in favor ——— defendants, then the jury find as their general verdict in favor of defendants.

"Geo. L. Dennis, Foreman."

On the return of the foregoing special verdict, the circuit court rendered a judgment in favor of the defendants (Bank v. Bostwick, 71 Fed. 641), and the plaintiff bank thereupon sued out a writ of error.

M. W. Herrick (H. C. Brome was with him on the brief), for plaintiff in error.

F. B. Tiffany, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

In view of the issues raised by the pleadings, and the theory on which the case was tried and determined by the circuit court, the crucial question of fact was whether the plaintiff bank, when it purchased the note in controversy, knew or understood that in selling the same the firm of Bostwick & Nixon was acting merely as a broker for W. W. Bilger, the payee, and that he was the real vendor of the note. The decision of the case appears to have hinged on the determination of that issue of fact (Bank v. Bostwick, 71 Fed. 641, 646), yet the jury failed to make a finding on that issue. They incorporated into their verdict, in a narrative form, certain testimony, which would undoubtedly have warranted a finding by the jury upon the issue above stated; but they failed to draw any inferences therefrom, or to state what conclusion they had reached, touching the issue in question upon which the judgment depends. A special finding of fact, to be of any avail, must be a statement of the ultimate facts which, in the opinion of the jury, the evidence tends to establish, rather than the evidence on which the ultimate facts rest. A special finding is necessarily imperfect and insufficient if it devolves upon the court the duty of deducing from the evidence the ultimate conclusion on a material issue of fact which the jury ought to draw. Insurance Co. of North America v. International Trust Co., 36 U. S. App. 291, 17 C. C. A. 616, 71 Fed. 88; Burr v. Navigation Co., 1 Wall. 99, 102. When a case is tried by a jury, the jury is the sole arbiter of questions of fact, and the duty of finding the facts cannot be discharged in part by the jury and in part by the court. In the present case, we think it clear that the jury should have ascertained and determined from all the testimony in the case, both oral and documentary, whether the plaintiff bank bought the note from the defendants knowing that they were acting merely as brokers for W. W. Bilger, the payee, and were not otherwise interested in the paper. In view of the fact that the special verdict is defective in the respect above indicated, and does not respond to one of the most material issues raised by the pleadings, we cannot say that the judgment was warranted by the verdict. Bank v. Farwell, 12 U. S. App. 409, 418, 6 C. C. A. 24, 29, 56 Fed. 570.

The judgment is accordingly reversed, and the case is remanded to the circuit court, with directions to grant a new trial.